# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANDREA MCNEILL ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-15-61-L |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant, ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Andrea McNeill, seeks judicial review of the Social Security Administration's denial of her applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI). United States District Judge Tim Leonard has referred this matter for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be affirmed.

## I.     Procedural Background

Plaintiff filed her applications for DIB and SSI on July 21, 2009, alleging a disability onset date of November 30, 2008. The Social Security Administration denied the applications initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record (AR) [Doc. No. 9], 37-48. The Appeals Council denied Plaintiff's request for review. AR 14-19. This appeal followed.

## II.    The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluations process); *see also* 20 C.F.R. §§ 404.1520; 416.920. The ALJ first determined

Plaintiff had not engaged in substantial gainful activity since November 30, 2008, the beginning date of the alleged disability. AR 39. At step two, the ALJ determined Plaintiff has the following severe impairments: back pain, intermittent kidney stones, status post kidney stone removal, depression and anxiety. *Id.* At step three, the ALJ found none of Plaintiff's impairments meets or medically equals any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 39-41.

> The ALJ next determined Plaintiff's residual functional capacity (RFC):
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with nonexertional limitations. The claimant can: lift/carry 20 pounds occasionally and up to 10 pounds frequently; and push/pull the same weight; can walk/stand up to 6 of 8 hours with normal breaks; and sit for up to 6 of 8 hours. The claimant can perform simple and some complex tasks; can relate to others on a superficial work basis; and can adapt to a work situation.

AR. 41. At step four, the ALJ concluded Plaintiff is able to perform her past relevant work as office manager, truck rental clerk, waitress and sales clerk. AR 47-48. Thus, the ALJ found at step four of the sequential evaluation that Plaintiff is not disabled. *Id.*

### III. Plaintiff's Claims

Plaintiff contends the Social Security Appeals Council erred in failing to properly consider evidence submitted after the ALJ's decision. Plaintiff characterizes the evidence as new and material. Plaintiff further contends the ALJ erred in failing to properly consider the opinions of Sue Rollins, ARNP, BC, MPH, pursuant to Social Security Regulation (SSR) 96-2p and SSR 06-03p. Plaintiff contends the signs and symptoms of her severe mental impairment (depression) meet or medically equal Listing 12.04. Finally, Plaintiff contends the ALJ's RFC determination is not supported by substantial evidence and constitutes legal error.

**IV.     Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms the evidence upon which the ALJ relied, or if there is a mere scintilla of evidence supporting the decision. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

**V.     Analysis**

    **A.     The Appeals Council's Consideration of Additional Evidence**

Plaintiff contends the Appeals Council erred in failing to properly consider two Mental Impairment Questionnaires completed by Plaintiff's treating physician, Dr. Patrick Horn, M.D. Both questionnaires were dated after the ALJ had rendered her decision and were first submitted to the Appeals Council in an attempt to demonstrate Plaintiff's mental impairment (depression) met the "Part B" criteria of Listing 12.04. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1,

Listing 12.04.[1]  The first questionnaire is dated May 8, 2013.  AR 1241-1244.  Dr. Horn stated he had visited with Plaintiff weekly and diagnosed Bipolar I Disorder, Major Depressive Disorder, and Anxiety.  AR 1241.  On a checklist form, Dr. Horn indicated Plaintiff had marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, "constant" deficiencies of concentration, persistence and pace resulting in a failure to complete tasks in a timely manner, and "continual episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors)."  AR 1244.

On the second questionnaire, dated September 24, 2013, Dr. Horn indicated he had treated Plaintiff for seven years, but cited December 14, 2009, as the beginning date of her psychological impairments.  AR 1257.  In this report, Dr. Horn found extreme restriction of activities of daily living, extreme difficulties in maintaining social functioning, constant deficiencies of concentration, persistent or pace, and continual episodes of deterioration or decompensation.  AR 1262.

Dr. Horn's opinions, as stated in the first of the two questionnaires, are consistent with the opinions of Sue Rollins, ARNP, BC, MPH, Plaintiff's counselor at Hope Community

---

[1] To meet Listing 12.04, a claimant must demonstrate she meets the "Part A" criteria and the "Part B" criteria or the "Part C" criteria.  The Commissioner acknowledges Plaintiff's severe depression meets the "Part A" criteria.  To meet the "Part B" criteria, a claimant must submit evidence demonstrating she has at least "marked" restrictions in two of the first three domains—activities of daily living, social functioning, or concentration, persistence and pace.  In the alternative, Plaintiff can demonstrate at least marked restrictions in one of the above domains and "repeated episodes of decompensation each of extended duration."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04.  "Decompensation" is a term of art defined as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning."  "Repeated episodes of decompensation, each of extended duration" means at least three episodes within one year, each lasting for at least two weeks.  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00 (C) (4).

Services. Ms. Rollins indicated she had met with Plaintiff for 30 minutes once a month. AR 1132-1137. On December 19, 2011, Ms. Rollins rated Plaintiff's restriction of activities of daily living and difficulties in social functioning as "marked," found "constant" deficiencies of concentration persistence or pace, and marked "continual" episodes of deterioration or decompensation. AR 1137. The finding of "continual episodes of deterioration or decompensation" does not correspond to the definition of "decompensation" in the regulations, and therefore, this finding has no real meaning. The ALJ did consider the opinions of Ms. Rollins, but gave the opinions "little weight" because the severe limitations Ms. Rollins assessed were "not consistent with the contemporaneous treatment notes from Hope Community Services" and because Ms. Rollins, a nurse practitioner, "is not considered an acceptable medical source." AR 46-47.

In its decision, the Appeals Council listed the additional medical records it had considered, including the two questionnaires from Dr. Horn, and found the evidence "does not provide a basis for changing the Administrative Law Judge's decision." AR 15.

Plaintiff contends the Appeals Council's "cursory analysis" of the newly submitted evidence lead to a "clearly flawed" determination that the evidence would not have changed the ALJ's decision. Opening Brief of Plaintiff (Plaintiff's Brief) [Doc. No. 19] at 12. Plaintiff contends Dr. Horn's opinions demonstrate Plaintiff meets both Part A and Part B of Listing 12.04.

Defendant Commissioner correctly notes the Appeals Council "explicitly addressed" the evidence it received subsequent to the ALJ's decision. Brief in Support of Commissioner's Decision (Defendant's Brief) [Doc. No. 22] at 8. Citing *Martinez v. Astrue*, 389 F. App'x 866, 869 (10th Cir. 2010), Defendant correctly states that, on review, this Court must determine

5

whether or not the additional evidence submitted to the Appeals Council "upsets the ALJ's decision." Defendant's Brief at 7-8. The undersigned agrees with Defendant that the new evidence Plaintiff submitted is insufficient to have changed the ALJ's decision.

First, the ALJ had before her the opinion of Ms. Rollins, who regularly attended Plaintiff, and who kept notes on Plaintiff's progress that the ALJ considered. Ms. Rollins offered the same opinions later espoused by Dr. Horn. The ALJ correctly noted Ms. Rollins was not an "acceptable medical source," but the principal reason for rejecting the opinion was based on its lack of support in the treatment records. AR at 46-47. Moreover, other substantial evidence supported the ALJ's decision. For example, Dr. Poyner, a consultative examiner, found only moderate restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties with concentration, persistence and pace, and no episodes of decompensation. AR 40-41.

In addition to *Martinez*, the Court also finds persuasive the Circuit's earlier decision in *Foy v. Barnhart*, 139 F. App'x 39 (10th Cir. 2005) (unpublished). In *Foy*, the plaintiff's disability benefits application was denied by the ALJ, and she pursued an appeal. On appeal, she submitted new evidence consisting of a "Mental Medical Source Statement" prepared by her treating physician. *Id.* at 41. The Appeals Council's decision denying review stated that it had "'considered the reasons you disagree with the Administrative Law Judge's decision and the additional evidence listed on the enclosed Order of Appeals Council.'" *Id.* (*quoting* record). The Appeals Council "concluded 'that this information does not provide a basis for changing the Administrative Law Judge's decision.'" *Id.* (*quoting* record). The Tenth Circuit rejected the plaintiff's argument that the Appeals Council erred because it did not discuss the new evidence and evaluate its impact, if any, on the decision. The Circuit stated the failure to do so did not

constitute error because there are no "statutes or regulations that would require such an analysis where new evidence is submitted and the Council denies review." *Id.* at 42. In this case, the Appeals Council's decision contains language almost identical to that in *Foy*. *See* AR at 15. Thus, the Appeals Council's consideration of the new evidence Plaintiff submitted does not support reversal and remand of the Commissioner's final decision.

> B. The ALJ's Consideration of the Opinions of Sue Rollins

Plaintiff's second assignment of error is based on her contention that the ALJ did not properly consider the opinion of Ms. Rollins. As discussed above, Ms. Rollins is the nurse practitioner that attended Plaintiff at Hope Community Services. Plaintiff acknowledges that Ms. Rollins is not an "acceptable medical source" under SSR 06-03p and that her opinion could not be given "controlling weight" pursuant to SSR 96-2p. But Plaintiff contends the ALJ erred in this case "where controlling weight was given not to Nurse Rollins, but to the opinions of nontreating, state agency physicians." Plaintiff's Brief at 14. Plaintiff's statement does not accurately reflect the ALJ's decision. Rather than giving the opinions of agency consultants "controlling weight," the ALJ gave "great weight to the reviewing state agency psychological consultant's[2] reconsideration assessment of the claimant's mental residual functional capacity[.]" AR 46.[3]

Plaintiff further contends the ALJ ignored medical evidence in the record that did not support her findings. Specifically, Plaintiff faults the ALJ for not discussing Global Assessment of Functioning (GAF) scores included in the records from Hope Community Services. Plaintiff's

---

[2] The ALJ is referring to the Mental Residual Capacity Assessment of Carolyn Goodrich, Ph.D. AR 889-891.

[3] In fact, "controlling weight" can be afforded only to a well-supported opinion of an acceptable medical source that is also the claimant's "treating source." SSR 96-2p.

7

GAF scores, as assessed during her treatment for depression, ranged from a low of 35 to a high of 52. AR 699, 895, 1078, 1079, 1163.

"The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes-Zachary v. Astrue* 695 F.3d 1156, 1162 n.1 (10th Cir. 2012). "Its purpose is to allow clinicians to plan treatment, measure its impact, and predict its outcome." *Kearns v. Colvin*, __ F. App'x __, 2015 WL 8479681, *3 (10th Cir. Dec. 10, 2015) (unpublished) (*citing* Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders*, 32 (4th ed. Text Revision 2000)). A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at time illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child beats up younger children, is defiant at home, and is failing at school)." *Keyes-Zachary*, 695 F.3d at 1162 n.1.

A GAF score between 41 and 50 "indicates '[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job).'" *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (*quoting* Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)). A low GAF score, however, does not mandate a finding of disability. *See Seymore v. Apfel*, 1997 WL 755386 at *1–2, 131 F.3d 152 (10th Cir. Dec. 8, 1997); *Cox v. Apfel*, 2000 WL 1472729 at *9 (D. Kan. Feb. 24, 2000). More particularly, although a "GAF score of fifty or less ... does suggest an inability to keep a job," *Lee v. Barnhart*, 117 Fed. App'x. at 678, that determination is not entirely self-evident, *see id.* (unexplained GAF score not probative: "[t]he claimant's impairment, for example, might lie

solely within the social, rather than the occupational, sphere"); *Oslin v. Barnhart*, 69 Fed. App'x. 942, 947 (10th Cir. 2003) ("[T]he GAF rating may indicate problems that do not necessarily relate to the ability to hold a job[.]"). Although GAF scores may be highly probative when coupled with detailed descriptions of how the rating affects the plaintiff's ability to work, *Eden v. Barnhart*, 109 Fed. App'x. 311, 314 (10th Cir. 2004); *Seymore*, 1997 WL 755386 at *2, 131 F.3d 152, here, no medical or other source ever made the critical connection between Plaintiff's GAF scores and her work-related functioning.

Moreover, the Commissioner declined to adopt the GAF scale for use in disability programs; *See* e.g., "Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury," 65 Fed. Reg. 50,746, 50,764–65 (Aug. 21, 2000); and since that time, the American Psychiatric Association has eliminated the GAF scale from DSM–V. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM–V) 16 (5th ed.) (2014).

Finally, if the ALJ erred in failing to mention the GAF scores, her error is harmless. *See Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988) (mere fact of error does not warrant remand if the ALJ's determination is otherwise supported by substantial evidence). The ALJ properly relied on the entire medical record in determining Plaintiff is not disabled.

### C. The ALJ's Finding at Step Three

Plaintiff contends she meets the criteria of Listing 12.04 for depression and should have been found disabled at step three of the sequential evaluation. Plaintiff faults the ALJ for "summarily" concluding that Plaintiff's mental impairments do not meet the criteria of a listed impairment. Plaintiff's Brief at 16. Plaintiff again mischaracterizes the ALJ's decision. In fact, the ALJ considered Plaintiff's physical and mental impairments, both singly and in combination,

to determine whether the severity of Plaintiff's impairments met or medically equaled a listed impairment. AR 39-41.

Plaintiff's assertion that she meets Listing 12.04 is based on the opinions of Ms. Rollins and Dr. Horn, gleaned from the checklists they generated. But as discussed above, Dr. Horn's opinions were not before the ALJ, and the Appeals Council properly considered the opinions before determining they were not material to the outcome of the ALJ's ultimate decision. Further, as previously discussed, the ALJ gave Ms. Rollins' opinions little weight based on the record as a whole. Thus, the ALJ did not err at step three of the sequential evaluation.

### D. The ALJ's RFC Determination

Plaintiff's final assignment of error is based on the ALJ's RFC determination at the first phase of step four. Plaintiff has limited her assignments of error to the ALJ's determination of the mental RFC—the findings that Plaintiff can perform simple and some complex tasks; can relate to others on a superficial work basis; and can adapt to a work situation. AR 41. Plaintiff again bases her argument on the ALJ's failure to consider GAF scores and failure to afford more than "little weight" to the opinions of Ms. Rollins. Plaintiff's Brief at 20. Both of these bases for a finding of disability have been previously discussed and rejected.

Additionally, as the Commissioner notes, a clinician at Hope Community Services evaluated Plaintiff on November 2, 2009. The clinician rated Plaintiff's functional limitations finding only "mild" impairments in the areas of interpersonal relationships, role performance and self-care. The clinician rated Plaintiff's functional limitations as "moderate" in the areas of feeling/mood/affect, thinking/mental process, and family relationships. The only "severe" rating pertained to her medical/physical limitations. AR 699. Plaintiff was prescribed medication and referred for group and individual therapy. AR 714-720.

With medication and counseling, Plaintiff's symptoms improved. On February 15, 2010, the clinician reported Plaintiff was "in a good mood," but still reported problems with concentration. AR 833. Subsequent evaluations indicate Plaintiff's anxiety was exacerbated primarily by her financial concerns. AR 831-32; 990-991. In January 2011, Plaintiff reported she had "been doing better lately due to being started on pain medications" for her kidney stones. AR 1090. Throughout the remainder of 2011, Plaintiff reported moderate depression and anxiety. AR 1077, 1076, 1067. In May 2011, Plaintiff said she was "doing really good." AR 1066. She reported only mild anxiety in June 2011, and reported in August 2011 that her medication was effective in controlling her depression. AR 1061.

The treatment notes support a conclusion that Plaintiff's symptoms significantly improved over time and were well controlled with medication. Thus, the weight the ALJ afforded Ms. Rollins' opinion was well supported by the treatment records. Accordingly, the ALJ's RFC determination was based on substantial evidence and does not constitute legal error.

## RECOMMENDATION

In sum, the Commissioner's final decision should be affirmed. The Appeals Council correctly determined the new evidence Plaintiff provided on appeal was not "material." The ALJ's consideration of Ms. Rollins' opinion was sufficient, and the ALJ's step-three and step-four determinations are supported by substantial evidence

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by March 4, 2016. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to

this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 18th day of February, 2016.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE